Vahe Khojayan  (SBN 261996)
YK LAW, LLP
445 S. Figueroa Street, Ste 2280
Los Angeles, CA 90071
Tel: (213) 401-0970
Fax: (213) 529-3044
Email: vkhojayan@yklaw.us

Attorneys for debtor-in possession
OKAYSOU CORPORATION

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>**OKAYSOU CORPORATION**<br><br>          Debtor-in-possession | Case Number: **6:23-bk-11535-MH**<br><br>Chapter 11<br><br>**NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDER (1)  AUTHORIZING USE OF CASH COLLATERAL; (2)  REQUIRING AMAZON TO TURN OVER ACCOUNT CREDENTIALS AND ACCUMULATED FUNDS TO DEBTOR**<br><br>Hearing Date:<br><br>Date: July 11, 2023<br>Time: 2:00PM<br>Courtroom 301, 3420 Twelfth Street, Riverside, CA 92501 |

    PLEASE TAKE NOTICE that the hearing on shortened notice on **DEBTOR'S MOTION FOR ORDER  (1) AUTHORIZING USE OF CASH COLLATERAL; (2) REQUIRING AMAZON TO TURN OVER ACCOUNT CREDENTIALS AND ACCUMULATED FUNDS TO DEBTOR** ( "Motion"), is set to take place on July 11, 2023 at 2:00PM in Courtroom 301 of the United States Bankruptcy Court located at 3420 Twelfth Street, Riverside, CA 92501

Any opposition to the motion shall be made no later than July 10, 2023 12:00PM and served by email and overnight mail to Debtor's counsel YK Law, LLP at 445 S. Figueroa Street, Ste 2280, Los Angeles, CA 90071.  Any replies may be made orally at the hearing.

The following Documents are attached to this notice:

(1) DEBTOR'S MOTION FOR ORDER  (1) AUTHORIZING USE OF CASH COLLATERAL; (2) REQUIRING AMAZON TO TURN OVER ACCOUNT CREDENTIALS AND ACCUMULATED FUNDS TO DEBTOR: and

(2)  ORDER: GRANTING APPLICATION AND SETTING HEARING ON SHORTENED NOTICE

(3) NOTICE OF ERRATA

Date: 06/29/2023                              YK Law, LLP


By:_____/s/ Vahe Khojayan_____
         Vahe Khojayan

---

**NOTICE OF HEARING**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**445 S. Figueroa Street, Ste 2280**
**Los Angeles, CA 90071**

A true and correct copy of the foregoing document entitled (*specify*):___ **Notice of Hearing**___ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On __06/29/2023___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Abram Feuerstein, esq on behalf of U.S. Trustee United States Trustee (RS): abram.s.feuerstein@usdoj.gov**

**Everett L Green on behalf of U.S. Trustee United States Trustee (RS): everett.l.green@usdoj.gov**

**Vahe Khojayan on behalf of Debtor Okaysou Corporation: vkhojayan@yklaw.us**

**Yi Hui Lee on behalf of Interested Party Party Interested: mlee@yklaw.us**

**Cameron C Ridley on behalf of U.S. Trustee United States Trustee (RS): Cameron.Ridley@usdoj.gov**

**Allan D Sarver on behalf of Interested Party Party Interested: ADS@asarverlaw.com**

**Raymond Trojan on behalf of Interested Party Party Interested: trojan@trojanlawoffices.com**

**United States Trustee (RS): ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On __06/29/2023___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __06/29/2023___, I served the following persons and/or entities by personal delivery, overnight mail, facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

> **Email: to Attorneys for Amazon Capital Services, Inc.:** Mike.Gearin@klgates.com, Brian.Peterson@klgates.com, Denise.Lentz@klgates.com
>
> **Email to UST**: Cameron.Ridley@usdoj.gov
>
> **Overnight mail to: United States Trustee 801 University Ave # 720, Riverside, CA 92501,**
>
> **Amazon Capital Services, Inc., 410 TERRY AVENUE NORTH, SEATTLE, WA 98109**
>
> **Amazon Capital Services, Inc.  c/o CORPORATION SERVICE COMPANY, 300 DESCHUTES WAY SW,  STE 208 MC-CSC1, TUMWATER, WA, 98501**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 06/29/2023 | Tina Chenorjoukian | /s/ Tina Chenorjoukian |
|---|---|---|
| Date | Printed Name | Signature |

**NOTICE OF HEARING**

Vahe Khojayan (SBN 261996)
YK Law, LLP
445 S. Figueroa Street, Ste 2280
Los Angeles, CA 90071
Tel: (213) 401-0970  Fax: (213) 529-3044
vahe@yklaw.us

Attorneys for debtor-in possession
Okaysou Corporation

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>**OKAYSOU CORPORATION**<br><br>                Debtors-in possession | Case Number: 6:23-bk-11535-MH<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ORDER (1) AUTHORIZING USE OF CASH COLLATERAL; (2) REQUIRING AMAZON TO TURN OVER ACCOUNT CREDENTIALS AND ACCUMULATED FUNDS TO DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS IN SUPPORT THEREOF**<br><br>  Date: TBD<br>  Time: TBD<br>  Place: Courtroom 301, 3420 Twelfth Street, Riverside, CA 92501-3819 |

TO THE HONORABLE MARK H. HOULE, UNITED STATES BANKRUPTCY

JUDGE, UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:

Debtor in possession Okaysou Corporation., by and through its attorney of record in this

case, hereby moves the court for an Order Authorizing the Use of Cash Collateral ("Motion").

Debtor also requests that the Court order Amazon Services, LLC or any other subsidiary of

1

Amazon.com, Inc. (collectively "Amazon") to provide Debtor's chief restructuring officer with Debtor's seller's account credentials and to turn over the funds accumulated in Debtor's Amazon Account to Debtor.

The cash collateral consists of Debtor's assets, receivables, and any other property of Debtor ("Property"). There is a security interest on the Property held by Amazon Capital Services, Inc. ("ACS") by virtue of a secured loan agreement in the original amount of $900,000 ("Security Agreement"). Attached hereto as Exhibit 1 is a copy of that agreement. The servicing payments on that loan are $80,381.33. Debtor estimates that the outstanding balance at this time is around $600,000. Debtor proposes to continue making the $80,381.33 per month payments on the Security Agreement throughout the use of the cash collateral..

Debtor seeks to use the cash collateral of ACS and seeks to continue making payments under the Security Agreement, without any prejudice to its right to propose an alternative treatment of the claim in its chapter 11 Plan of Reorganization. This motion is based upon the Memorandum of Points and Authorities in Support thereof, Declaration of David Mickelson and the pleadings and files in the Debtor's bankruptcy case, and upon such further oral and documentary evidence as may be presented to the Court in support of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF MOTION AND NEED FOR SHORTNEDED HEARING

Debtor is a corporation engaged in e-commerce sale of air purifiers and accessories. Most of debtor's sales are through Amazon.com and its websites that are managed though Shopify.com. Prior to the filing of this case, Debtor was facing a patent infringement lawsuit from Arovast Corporation related to the design of its air purifiers. Debtor was also facing threat of supply disruptions from its China based supplier. Debtor's Chinese partner Fudong Cao (and insider) also had access and control of debtor's Amazon account. Cao was the one in control of Amazon account master password. It became likely that at some point that Debtor's supply of goods may be cut off and Cao may cut off access to Debtor's funds and proceeds of the sale.

Debtor's plan was to enter chapter 11, liquidate its inventory and pay back its creditors in orderly fashion. Debtor filed for Chapter 11 bankruptcy on April 17, 2023.  Since then, it has not used its cash collateral as it engaged in negotiations with ACS for use of cash collateral. However, these negotiations have stalled, forcing Debtor to seek court intervention for use of its cash collateral.

Debtor seeks immediate use of all cash and cash equivalents on hand and hereafter generated from Debtor's operations to the extent the same constitutes cash collateral pursuant to 11 U.S.C. § 363(a) ("Cash Collateral"). Debtor also seeks an order requiring Amazon to turn over the funds accumulated in Debtor's Amazon seller account to the debtor in possession and to provide Debtor's chief restructuring officer credentials to access that account.

## II.    STATEMENT OF FACTS

A. **Events Precipitating the Chapter 11 Filing and Background Facts**

1. This Chapter 11 case was commenced on April 17, 2023 by debtor filing a voluntary petition.

2. Prior to the bankruptcy Debtor was facing the risk of its funds being misappropriated and transferred to China, where the court of United States agencies will have no enforcement authority.

3. Debtor is planning to regain access to its Amazon account, which was cut off after it filed for bankruptcy and sell its inventory.  The proceeds of the sale will be used to repay its creditors.

4. Debtors' plan is based on the orderly sale of its inventory and at least partial repayment of all creditors.

5. In the meantime Debtor needs to use the revenue it generates from the Cash Collateral to pay its creditors and avoid going further into default.

6.   Attached to the Declaration of David Mickelson is a 90 day projected budget and cash flow statement for Debtor ("Projections").  Debtor seeks to use the Cash Collateral pursuant to the projections/budget provided.

7.   The projections do provide for payments to professionals.  All of the expenses in the Projections are necessary to maintain Debtors in operation and preserve the value of the Property.

**B.  Operating Data.**

The Projection attached as Exhibit 2 to the David Mickelson's declaration project Debtor's cash needs for July, August and November.  Additionally, Since Debtor has not used its cash collateral in the months of May and June, it will need to repay certain post-petition expenses, such as rents and utilities.  The Projections were developed by Debtor based upon current operating data and Debtor's estimate of future cash needs.  Accordingly, cash collateral pool will not be depleted through continued operations but will remain stable through post petition operations.

**C.  Adequate Protection Facts.**

The Cash Collateral consists of Debtor's assets, mainly its inventory that is already stationed in Amazon warehouses. As additional adequate protection, Debtor will include the following provision in the cash collateral order:

1.   The Debtors will provide ACS all interim statements and operating reports required to be submitted to the Office of the United States Trustee, within 21 days after the end of each monthly period after the Petition Date.

2.   Debtors will make adequate protection payments to ACS, pursuant to 11 U.S.C. 362(d)(3) in the amount of $80,381.33 which equals to its current contractual payment to ACS.

3.   Debtor will continue maintaining its general commercial insurance.

4.   Additionally, ACS's interest will be adequately protected by the maintenance and preservation of the Cash Collateral that is already stored in Amazon warehouses.

The foregoing provision, coupled with the value that will be preserved and generated through the continued operation of the Debtor will provide adequate protection required under 11 U.S.C. § 363.

## III.    ARGUMENT

### A.    <u>The Use of Cash Collateral For Operations Should be Authorized in Accordance with the Projections.</u>

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e). Pursuant to <u>United States v. Timbers of Inwood Forest</u>, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien.

Under this holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value under the debtor's proposed usage of cash collateral. <u>Timbers</u>, 108 S. Ct at 633; <u>In re Ledgemere Land Corp</u>., 116 B.R. 338, 343 (Bankr. D.Mass. 1990) (So long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected); <u>In re Johnson</u>, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (Since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); <u>In re Century Inv. Fund VII, Ltd. Partnership</u>, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (Where value appears to be stable, creditor is not entitled to adequate protection payments); <u>In re Kessler</u>, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under Timbers, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); <u>In re Anderson</u>, 88 B.R. 877, 889 ( Bankr. N.D. Ind. 1988) (Secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); <u>In re McCombs Properties VI, Ltd.</u>, 88 B.R. 261 (Bankr. C.D.Cal. 1988); <u>In re Elmore</u>, 94 B.R. 670 ( Bankr. C.D. Cal. 1988).

Alternatively, a debtor can make an adequate protection showing even where the collateral is declining in value, as long as the creditor's interest therein is protected by a reasonable equity cushion. See, <u>In re Mellor</u>, 734 F. 2d 1396 (9th Cir. 1984); <u>In re Harrington &</u>

Richardson, Inc., 48 B.R. 431 (Bankr. D.Mass. 1985); In re Mccombs Properties VI, Ltd., 88

B.R. 261 (Bankr. C.D.Cal. 1988).

As illustrated in Exhibit "2" to the Mickelson Declaration the cash collateral pool in

which secured creditors hold an interest will not decline through the usage proposed by Debtors.

In fact, Debtor's operating expenses are fairly modest compared to its projected sales and

revenues to be generated.  The overall value of the estate will increase or at least remain stable

through this usage, leaving secured creditors interests adequately protected. Additionally,

secured creditor ACS is receiving full contractual payments on its secured loan.

No cash collateral funds were used by Debtors without court approval.


B.  **ACS is Adequately Protected**.

A debtor's use of estate property is governed by 11 U.S.C. § 363. Section 363(c)(2)

permits a debtor to use, sell, or lease cash collateral only if the entity with an interest in the cash

collateral consents or the Court authorizes such use.  The use of Cash Collateral should be

permitted because Wilshire Bank's secured loan is adequately protected.  See, e.g., Security

Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC), 314 B.R. 436, 444 (B.A.P. 9th Cir.

2004) ("The plain language of § 363 allows a debtor to use cash collateral if the secured

creditor's interest is adequately protected").

If the value of secured creditor's collateral is expected to remain relatively constant, the

secured creditor is deemed to be adequately protected.  See, Orix Credit Alliance, Inc. v. Delta

Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 730 (11th Cir. 1995) (payment of

"interest" not required); Federal Nat'l Mortgage Assoc. v. Dacon Bolingbrook Assoc. Ltd.

Partnership, 153 B.R. 204, 210 (Bankr. N.D. Ill. 1993) (upholding bankruptcy court's allowance

of use of cash collateral despite findings that the "small amount of oversecurity, which was not

'obviously not enough in itself to provide any adequate protection for any substantial decline in

the value of the property'", where the bankruptcy court determined that the property value of

debtor's apartment building would not further decline during period in question); Westchase I

Assoc. L.P. v. Lincoln Nat'l Life Ins. Co., 126 B.R. 692, 694 (Bankr. D.N.C. 1991).  This is no

less true where the collateral to be used by the debtor in possession is comprised of cash or other

"soft" assets.  *See,* <u>Dynaco</u>, 162 B.R. at 394; <u>In re McCombs Properties VI, Ltd.</u>, 88 B.R. 261, 267 (Bankr.C.D.Cal. 1988).

Here, as in the cases cited above, the continuation the Debtor's generated income from the cash collateral protects ACS's secured interest secured interest in the Cash Collateral by maintaining its value.  Additionally, Debtor proposes to pay ACS adequate protection payments each month equal to pre-petition contractual payments.  Debtor will also maintain insurance on the Cash Collateral and its operations.

## C.   <u>Debtor should be Authorized to Use Cash Collateral to Operate and Maintain the Property Based Upon the Equities of this Case.</u>

Under 11 U.S.C. § 552(b), a lender's security interest does not extend to postpetition property if the Court so orders "based on the equities of the case."  In determining the equities of the case, a court has "broad discretion to balance the protection of secured creditors . . . against the strong public policies favoring continuation of jobs, preservation of going concern values and rehabilitation of distressed debtors, generally."  H.R. 5116, 103rd Cong., 2nd Sess., 140 Cong. Rec. H10768 (1994).

In the present case, the continued operation of the debtor will require the use of Cash Collateral and the efforts of the Debtor.  Under those circumstances, limiting any lien on revenues generated postpetition would be appropriate under 11 U.S.C. § 552(b).As was stated by the court in <u>In re Cafeteria Operators, L.P.</u>, 299 B.R. 400 (Bankr. N.Tex. 2003). Although, at this point the Court does not need to make any determination with respect to the applicability of 11 U.S.C. § 552(b) in the present case, nonetheless, because this case exemplifies a situation in which a creditor's collateral can be surcharged under 11 U.S.C. § 506(c) and the equities permit a restriction on the creditor's liens under section 552(b), the use of Cash Collateral is clearly appropriate.

Debtor's projections are reasonable expenses to operate Debtor's business while it attempts to sell its inventory.  The projection also act as a proposed budget for the use of the cash collateral.  Debtor requests ability to deviate by 20% from each projected line item.

**D.  <u>Debtor Amazon Account and Access to It.</u>**

Debtor believes that Amazon, through its subsidiary ACS is currently holding substantial amount of funds generated by the sale of Debtor's inventory.  Debtor requests that the Court order Amazon to turn over the funds in Debtor's seller's account and provide debtor's Chief restructuring officer credentials to access the Amazon account.  As the funds located in the Amazon account are cash collateral funds that debtor seeks to use, and are property of the estate, Amazon is obligated to turn over said funds to the Debtor.

**IV.     CONCLUSION**

Based on the above this motion should be granted.

Dated:  06/26/2023                           By: _____

                                                 Vahe Khojayan

                                                 Proposed Counsel for Debtor in Possession

### DECLARATION OF DAVID MICKELSON

I, David Mickelson, declare that:

I am the proposed chief restructuring officer of the debtor and debtor in possession in this case. I have personal knowledge of the facts alleged herein and if called upon as a witness, I could and would competently testify thereto. I make this declaration in support of Debtor's Motion for Order Authorizing Use of Cash Collateral (the "Motion").

1. This chapter 11 proceeding was initiated on April 17, 2023, by filing a voluntary chapter 11 petition (the "Petition Date.").

2. Debtor's owes a secured loan to Amazon Credit Services, Inc. Attached hereto as Exhibit 1 is a copy of that loan agreement.

3. Debtor is a corporation engaged in ecommerce sale of air purifiers and accessories. Most of debtor's sales are through Amazon.com and its websites that are managed though Shopify.com. Debtor's purpose in chapter 11 is to sell its inventory and pay back its creditors in orderly fashion.

4. Debtor filed for Chapter 11 bankruptcy on April 17, 2023. Since then, it has not used its cash collateral as it engaged in negotiations with ACS for use of cash collateral. However, these negotiations have stalled, forcing Debtor to seek court intervention for use of its cash collateral.

5. Debtor needs the use of cash collateral to pay its operating expenses, administrative fees and continue selling its inventory.

6. The proposed budget for use of the cash collateral is attached hereto as Exhibit 2. The proposed budget was generated by me using Debtor's pre-petition financial information and the needs of this case going forward.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 06/26/2023                By: _David Mickelson_____

David Mickelson

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**445 S. Figueroa Street, Ste 2280**
**Los Angeles, CA 90071**

A true and correct copy of the foregoing document entitled (*specify*):  __**Application for Order Setting Hearing on Shortened Notice**__  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On __06/27/2023__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Abram Feuerstein, esq on behalf of U.S. Trustee United States Trustee (RS): abram.s.feuerstein@usdoj.gov**

**Everett L Green on behalf of U.S. Trustee United States Trustee (RS): everett.l.green@usdoj.gov**

**Vahe Khojayan on behalf of Debtor Okaysou Corporation: vkhojayan@yklaw.us**

**Yi Hui Lee on behalf of Interested Party Party Interested: mlee@yklaw.us**

**Cameron C Ridley on behalf of U.S. Trustee United States Trustee (RS): Cameron.Ridley@usdoj.gov**

**Allan D Sarver on behalf of Interested Party Party Interested: ADS@asarverlaw.com**

**Raymond Trojan on behalf of Interested Party Party Interested: trojan@trojanlawoffices.com**

**United States Trustee (RS): ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On __06/27/2023__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge __will be completed__ no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge __will be completed__ no later than 24 hours after the document is filed.

**Overnight delivery to Chambers of Judge Mark Houle, Courtroom 301, 3420 Twelfth Street, Riverside, CA 92501-3819**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 06/27/2023 | Tina Chenorjoukian | /s/ Tina Chenorjoukian |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

9

MOTION

| | |
|---|---|
| Amazon Capital Services, Inc.<br>PO Box 84837<br>Seattle, WA 98124 | Arovast Corporation c/o<br>Trojan law Offices<br>9250 Wilshire Blvd., Ste 325<br>Beverly Hills, CA 90212 |
| Amazon Capital Services, Inc.<br>410 TERRY AVENUE NORTH<br>SEATTLE, WA 98109 | Cansail Fulfillment 13828<br>Mountain Ave,<br>Chino, CA 91710 |
| Amazon Capital Services, Inc.<br>c/o CORPORATION SERVICE COMPANY<br>300 DESCHUTES WAY SW,  STE 208 MC-CSC1,<br>TUMWATER, WA, 98501 | Elekcity Corporation c/o<br>Trojan law Offices<br>9250 Wilshire Blvd., Ste 325<br>Beverly Hills, CA 90212 |
| Amazon.com Services, LLC<br>410 TERRY AVENUE NORTH<br>SEATTLE, WA 98109 | Fedex<br>3965 Airways, Module G 4th<br>Floor<br>Seattle, WA 98116 |
| Amazon.com, Services, LLC<br>c/o CORPORATION SERVICE COMPANY<br>300 DESCHUTES WAY SW,  STE 208 MC-CSC1,<br>TUMWATER, WA, 98501 | Rexford Industrial<br>11620 Wilshire Blvd, #1000 Los<br>Angeles, CA 90025 |
| Amazon.com, Inc.<br>410 TERRY AVENUE NORTH<br>SEATTLE, WA 98109 | UPS<br>PO box 650116<br>Dallas, TX 75265-0116 |
| Amazon.com, Inc.<br>c/o CORPORATION SERVICE COMPANY<br>300 DESCHUTES WAY SW,  STE 208 MC-CSC1,<br>TUMWATER, WA, 98501 | Wakool Transport 19130<br>San Jose Ave,<br>Rowland Heights, CA 91748 |
| | WebBank<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219 |
| Amazon Services, LLC.<br>410 TERRY AVENUE NORTH<br>SEATTLE, WA 98109 | INTERNAL REVENUE SERVICE<br>P.O. BOX 7346<br>PHILADELPHIA, PA 19101-7346 |
| Amazon services, LLC.<br>c/o CORPORATION SERVICE COMPANY<br>300 DESCHUTES WAY SW,  STE 208 MC-CSC1,<br>TUMWATER, WA, 98501 | Internal Revenue Service PO<br>Box 7346<br>Philadelphia. PA 19101-7346 |
| | Tiansai Pang<br>#303, Renxing Rd., Yubei Dist.,<br>Chongqing, China 303 |

10

MOTION

Souxing Information Technology
(Chongqing) Co. Ltd  #56, Ruitian Rd.,
Yuzhong Dist., Chongqing, China  56

Fundong Cao
#56, Ruitian Rd., Yuzhong Dist.,
Chongqing, China  56

Cixi Belian Electrical Appliance
NO.28th,Haitong Road
,Guanhaiwei Town,CIXI China 28

Hanking Plastic Manufactory(Shenzhen)
Co., LTD Pingdong Village Pingdi
Town Longgang District Shenzhen
518117 China

Hexathelid Corporation Limited
BUILDING1,YONGXIN INDUSTRY
PARK, NO.89, 891

JPMorgan Chase Bank, N.A. s/b/m/t
Chase Bank USA, N.A. c/o Robertson,
Anschutz, Schneid, & Crane LLP
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487

MOTION

# EXHIBIT 1

**amazon** lending

## Application Information

| | | | |
|---|---|---|---|
| • Loan Amount: | $900,000.00 | • Total Cost: | $64,575.96 |
| • Loan Term: | 12 months | • Monthly Payment: | $80,381.33 |
| • Interest: | $64,575.96 | • Annual Interest Rate: | 12.99% |
| • Origination Fee: | $0.00 | • Origination Fee Rate: | 0.00% |
| • User: | Okaysou okaysou@gmail.com | • Application Date: | Nov 27, 2022 05:09 PM PST |

## Business Information

**Legal name of business:**

Okaysou Corporation

**Business address:**

2010 Napoli ct Unit 103
Corona, ca 92881

**Credit History:**

The business and its owner's credit histories are clear of bankruptcy, serious delinquency, open judgement and tax liens.

Yes

**Primary Contact (Not a Guarantor):**

Henry Ma

**Phone Number:**

4015881808

**Email:**

okaysou@gmail.com

**Federal tax ID:**

On File

**Business declaration:**

The business is located and organized in California, and all the information in the Business Information section above is correct.

## Certifications, Authorizations and Consents:

- **CERTIFY THAT THE BUSINESS IDENTIFIED IN THIS APPLICATION FORM (THE "BUSINESS") WILL USE ALL LOAN PROCEEDS TO DIRECTLY SUPPORT ITS SELLING BUSINESS ON AMAZON, AND FOR NO OTHER PURPOSES.**
- Acknowledge that the Loan, defined below, is a commercial loan, and is not intended for household or consumer purposes.
- Certify that you are an owner, sole proprietor, principal or authorized representative of the Business, and that you are duly authorized to apply for the Loan and execute and deliver the Loan Agreement, Consent to Electronic Communications, the Terms and Conditions for Automatic ACH Payment Option on behalf of the Business.
- Certify that all owners of the Business are at least 18 years old.
- Certify that neither you nor any affiliate of the Business is (1) an employee of Amazon.com, Inc. or its affiliates, (2) an officer or director of Amazon.com, Inc., or (3) an immediate family member or controlled entity of any officer or director of Amazon.com, Inc.
- Consent to receive any required disclosures, including a response to this Application Form, electronically to the email address listed under the "Primary Contact Email" in this Application Form and agree to the Consent to Electronic Communications.
- Certify that everything you have stated in this Application Form is true and correct.
- Certify that, if you were required in the Application Information to provide the name of a personal guarantor, you are the personal guarantor ("Guarantor"), and you agree to the obligations of the Personal Guaranty.

# LOAN AGREEMENT

**1. Promise to Pay.** The Business will pay to Amazon Capital Services, Inc. ("we", "us" or "our") the principal, interest, late interest, and any other charges and expenses due to us under this Loan Agreement, including charges and expenses in exercising any of our remedies, which altogether constitutes the "Loan". The Business must make periodic payments of interest and principal according to the schedule set forth in this Loan Agreement. Any amounts due under this Loan Agreement that remain unpaid on the final scheduled payment due date will be due in full on that date. We may in our sole discretion request a Guarantor, who will be individually responsible for obligations under this Loan Agreement as further defined in the section labeled Personal Guaranty below.

**2. Interest and Late Payment Charges.** The principal balance of the Loan will accrue interest daily at the annual interest rate shown in the "Application Information" section of this Loan Agreement ("Annual Interest Rate") from the date we approve the Loan and it appears in Seller Central (the "Origination Date") until the Loan is paid in full. Interest payable on the Loan will be computed by (i) dividing the Annual Interest Rate by twelve to obtain the monthly interest rate (the "Monthly Interest Rate"), (ii) dividing the Monthly Interest Rate by the actual number of days elapsed in the statement period during which interest accrues and (iii) multiplying (ii) above by the principal balance of the Loan outstanding at the beginning of the statement period. Interest on the Loan will accrue on a daily basis and will be payable in arrears (x) on each payment date, (y) upon any prepayment of the Loan and (c) at maturity of the Loan.

If any payment is not made on time, interest will accrue daily on all past due amounts under the Loan at an annual interest rate (the "Late Interest Rate") equal to the lesser of the Annual Interest Rate plus 2.0% or the maximum amount permitted by applicable law until those amounts are paid in full.

**3. Making Payments.** The Business authorizes us to fund the Loan into the Business's Amazon seller account (the "Seller Account") administered by Amazon Services LLC or any other subsidiary of Amazon.com, Inc. ("Affiliate"). The Business directs Amazon Services LLC and its Affiliates to withhold disbursements from the Business's Seller Account sufficient to cover scheduled payments as well as any other amounts due under this Loan Agreement and remit those amounts to us whether or not such action would result in there being insufficient funds to make the next scheduled payment under the Loan Agreement or to meet any other Business obligations. The Business further authorizes Amazon Services LLC and its Affiliates to withhold disbursements from any other Amazon account affiliated with the Business in order to cover scheduled payments and any other amounts due under this Loan Agreement.**Unless we specify otherwise, scheduled loan payments will be automatically deducted from the first Seller Account disbursement after the date payment is due.** If we approve the Business to make more frequent scheduled payments in amounts less than the Monthly Payment, the Business agrees that this may result in an increase to the total interest due over the life of the Loan, and an

increase in the total amount payable to us.

For Loans with interest only payments for the first three payment periods after the Origination Date, payments are due monthly in an amount equal to all the accrued interest on the principal balance. Thereafter, the monthly payments are equal to the "Monthly Payment (Principal and Interest)" shown on the Loan Agreement. For Loans that do not qualify for the interest only payments described in the preceding two sentences, payments are due monthly in an amount equal to the "Monthly Payment" shown in the Application Information section of this Loan Agreement. Payments are due on the same date of each month as the Origination Date (or, if after the 28th of the month, the first day of the next month), beginning the month after the month of the Origination Date.

Loan proceeds will first be applied to pay off any negative seller balance the Business may have at the time of disbursement. All payments will be applied in the following order: (i) scheduled payments and other amounts due that have not been paid in full one month after they became due (each a "Past Due Payment"), first to accrued past due interest and then to past due principal, starting with the Past Due Payment that has been outstanding the longest, (ii) currently due interest that has accrued at the Late Interest Rate, (iii) currently due interest that has accrued at the Annual Interest Rate and (iv) currently due principal. If the Business does not have pending disbursements in its Seller Account sufficient to make a scheduled payment or pay any other amounts due, the Business is responsible for paying the remaining amount due by the applicable due date. The Business may make payment by Automated Clearing House (ACH) through Seller Central or by check. Checks must: (x) be made out to Amazon Capital Services, Inc., (y) include the Loan number on the subject line and (z) be mailed to: Amazon Capital Services, Inc., 410 Terry Ave. North, Seattle, WA 98109-5210. When mailing, a tracking number must be obtained and provided, upon request.

**4. Prepayment and Refinancing.** There is no penalty for repaying the Loan early. Unless the Business repays the Loan in full, any payments in excess of the Monthly Payment and any other charges due will be applied to outstanding principal. If the Business refinances a Loan through Amazon, the proceeds of the refinancing Loan will first be applied to pay off any existing negative seller balance, followed by the outstanding principal balance, accrued interest and any other unpaid fees on all existing loans. The net proceeds of the refinancing Loan will be disbursed to the Business's Seller Account. If the Business terminates the Consent to Electronic Communications, the Business agrees that we may declare this Loan immediately due and payable and exercise all remedies available to us at law or equity or as described in this Loan Agreement, including withdrawing the remaining balance from the Business's Seller Account as funds are available until paid.

**5. Default.** Subject to applicable law, the Business will be in default under this Loan Agreement if any of the following events occur: (i) we do not receive any payment under this Loan Agreement when due, (ii) the Business ceases offering products on Amazon.com, (iii) the Business violates any obligation under the Amazon Services Business Solutions Agreement or any applicable

Program Policy, (iv) the Business's ordered product sales on Amazon.com as reported in the Business's Seller Account ("OPS") in any 30 day period are less than 50% of the Business's lowest OPS on Amazon.com in any of the 12 months prior to the date of this Loan Agreement, (v) the collective value of the Business's units stored in Amazon fulfillment centers in the US, based on the list price of those units on Amazon.com, ("FBA Inventory Value") at any time during the term of this Loan Agreement is less than 50% of the Business's lowest average monthly FBA Inventory Value in any of the 12 months prior to the date of this Loan Agreement, other than because of inventory sales in the ordinary course of business, (vi) the number of ASINs listed by the Business as for sale on Amazon.com at any time during the term of this Loan Agreement decreases by 50% or more from the number of ASINs listed as at the Origination Date, (vii) the Business breaches any obligation, representation or warranty under or in connection with this Loan Agreement, (viii) the Business or Guarantor becomes insolvent, enters into receivership, makes an assignment for the benefit of creditors, or declares bankruptcy, or similar proceedings are commenced by or against the Business, (ix) any information, signature or certification provided in connection with the application, this Loan Agreement or the Consent to Electronic Communications is false, fraudulent, misleading or inaccurate, (x) an event occurs that has a material adverse effect on the business, operations or financial condition of the Business or on our rights and remedies under the Loan Agreement including, but not limited to, any adverse changes regarding the business reported by any credit bureau, (xi) there is no login to the Business's Seller Central account in any 30-day period, (xii) the Business undergoes a change of control or another entity or person acquires an aggregate of 10 percent or more of the ownership interests of the Business, (xiii) there occurs a sale of all or substantially all of the property or assets of the Business; or (xiv) any guaranty of the Business' obligations under the Loan is deemed unenforceable or the Guarantor revokes the Personal Guaranty or challenges the enforceability of the Personal Guaranty. The Business understands and agrees that if its selling privileges on Amazon.com are suspended or terminated, the loss of those selling privileges does not give rise to and cannot be used as a basis for any defense to or excuse of the Business's obligation to perform under this Loan Agreement.

**6. Remedies.** If the Business is in default, subject to any right the Business may have under law, the Business agrees that we may in our sole discretion exercise any remedy available to us at law or equity, including but not limited to any or all of the following actions: (i) declare the unpaid balance of the Loan to be immediately due and payable, (ii) enforce our rights as a secured party by directing Amazon Services LLC or its Affiliates to reserve, hold, and pay to us an amount up to the unpaid balance of the Loan from the Business's Seller Account and any other Amazon account affiliated with the Business until the unpaid balance of the debt under this Loan Agreement is paid in full, (iii) enforce our rights as a secured party, by taking possession of inventory that the Business or parties affiliated with the business have stored in Amazon fulfillment centers and disposing of it, or (iv) offset any amounts that are payable by the Business to us against any payments we or any of our Affiliates may owe to the Business. If this Loan Agreement is referred to an attorney or third party collections agent to collect the amount owed by the Business or otherwise enforce the terms of this Loan Agreement, the Business agrees to pay all of our costs

associated with such collection or enforcement action to the fullest extent not prohibited by applicable law, including without limitation our reasonable attorneys' fees, court and arbitration costs and any costs incurred in obtaining and executing upon a judgment. If we choose to take possession of and dispose of any Collateral that consists of inventory held in an Amazon fulfillment center, the Business agrees that we may credit the Business with the value of the Collateral as determined by us in good faith pursuant to a valuation formula that may take into account several factors (depending on the circumstances), such as the recent listed and sale prices of the inventory and the prices listed by the Business's competitors for sale of the same or similar inventory.

**7. Security.** Except with respect to any Business licensed in the State of Vermont, in order to induce us to make the Loan to the Business, the Business grants to us, to secure the payment and performance of all of the obligations under this Loan Agreement (including any additional debt arising from the Business's failure to pay or perform under this Loan Agreement, and including all Loans made to the Business in the future), a continuing first lien security interest in all of the following property the Business now owns or may acquire in the future (the "Collateral"): (i) all inventory at any time stored for the Business or Business's affiliated accounts in Amazon fulfillment centers, wherever found, (ii) any right, title or interest in the Business's Seller Account, as well as any other Amazon accounts affiliated with the Business, (iii) all Accounts, Chattel Paper, Deposit Accounts, Documents, Instruments, Investment Property, or General Intangibles, (iv) all Equipment, Goods, inventory and other tangible personal property located in the United States, (v) any books and records pertaining to the Collateral, and (vi) any insurance, proceeds or products of the foregoing. Until the balance of the debt under this Loan Agreement is paid in full, the Business will not be able to remove sellable inventory stored for the Business in Amazon fulfillment centers. The Business represents and warrants that it has and will maintain good, complete and marketable title to all Collateral, free and clear of any and all security interests, liens, or encumbrances of any kind that may be inconsistent with the Loan Agreement or our interests. Unless otherwise defined in this Loan Agreement, capitalized terms in this Section 7 are used as defined in the Uniform Commercial Code of Washington State.

**VERMONT NOTICE: For the avoidance of doubt, Section 7, and the grant of security interest set forth therein, and Section 8, do not apply to any Business licensed in the State of Vermont and the Loan constitutes an unsecured commercial loan for all intents and purposes under 8 V.S.A. § 2201. With respect to any Business licensed in the State of Vermont, the Loan is expressly subordinated to the prior payment of all senior indebtedness of the Business regardless of whether such senior indebtedness exists at the time of the Loan or arises thereafter.**

**8. Financing Statements; Attorney in Fact.** The Business authorizes us to file and, as we may deem necessary or desirable, to sign the name of the Business or its authorized representative on any documents and take any other actions that we deem necessary or desirable to ensure that our security interest is perfected. The Business agrees to cooperate by signing documents or taking

any other action we may request. Except in New Jersey, the Business appoints us as the Business' attorney in fact to sign the name of the Business to documents, applications, filings and certificates of title and transfer documents that are reasonably necessary to evidence or protect our security interest. To the greatest extent not prohibited by law, the Business agrees to pay (and we may charge the Business's Seller Account for) all fees necessary to file any documents in connection with the Business's obligations under this Loan Agreement. Any financing statements may describe the Collateral as "All assets of the Debtor".

**9. Notice of Business's Default.** If the Business or Guarantor becomes aware of the existence of any condition or event which with the lapse of time or failure to give notice would constitute an event of default under this Loan Agreement, it will immediately give us written notice describing the condition or event and any related action which it is taking or propose to take.

**10. Disputed Payments. The Business will not to send us partial payments marked "paid in full", "without recourse", or with similar language, but if the Business sends such a payment, we may accept it without losing any of our rights under this Loan Agreement. All written communications concerning disputed amounts, including but not limited to any check or other payment instrument indicating that the payment constitutes "payment in full" of the amount owed, must be marked for special handling and mailed or delivered to us at 410 Terry Ave. North, Seattle, WA 98109, Attn: Amazon Capital Services, Inc. and will be effective only if so delivered.**

**11. Notices; Change of Address.** The Business and the Guarantor agree that any notice we send to the Business will be received when the notice is delivered personally, when we mail it, postage paid, to the last address that we have for the Business in our records, or when the notice is delivered via email to the Primary Contact Email address provided in the Application Information. The Business and the Guarantor agree to notify us by email at amazon-lending@amazon.com(i) promptly and in any event within 30 days of any change in the Primary Contact Email address, postal address and telephone number, or change in the Business's principal place of business or state of residence, state of incorporation or legal name and (ii) promptly and in any event within 30 days of any additional secured credit that the Business obtains at any time during the term of this Loan Agreement.

**12. Interpretation; Severability.** Paragraph headings are for convenience only and may not be used in the interpretation of this Loan Agreement. If applicable law is finally interpreted so that charges collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (i) any such charges will be reduced to the permitted amounts and (ii) any amounts already collected that exceed the permitted amounts will be credited to the Business by, at our option, applying the credit to any amounts due hereunder or making a direct payment to the Business. If any provision in this Loan Agreement is invalid under applicable law, the remainder of the provisions in this Loan Agreement will remain in effect. The Business agrees that for purposes of compliance with law under this Loan Agreement, the Business's principal place of business or

state of residence is the business address provided in the Application Information.

**13. Assignment.** We may sell, assign or transfer any or all of our rights or obligations under this Loan Agreement (including without limitation, any or all of the Collateral) and any or all of our rights and remedies under this Loan Agreement without prior notice to the Business. The Business may not sell, assign or transfer this Loan Agreement or its obligations under this Loan Agreement in whole or in part, by operation of law or otherwise.

**14. Telephone Monitoring and Recording.** From time to time, we may monitor and/or record telephone calls regarding the Loan, and the Business and Guarantor agree to any such monitoring and/or recording.

**15. Communicating with the Business and the Guarantor; Consent to Contact by Electronic and Other Means.** We or our agents may contact the Business and the Guarantor for any lawful purpose related to the Loan, including for the collection of amounts owed to us and for the offering of products or services at any of the addresses, phone numbers or email addresses provided to us. No such contact will be deemed unsolicited. To the greatest extent not prohibited by applicable law, we or our agents may (i) contact the Business and the Guarantor at any address or telephone number (including wireless cellular telephone or ported landline telephone number) that may be provided to us from time to time; (ii) use any means of communication, including, but not limited to, postal mail, electronic mail, telephone or other technology, to reach the Business and the Guarantor; (iii) use automatic dialing and announcing devices which may play recorded messages; and (iv) send text messages to the Business's and Guarantor's telephone. The Business and the Guarantor may contact us at any time to ask that we not contact the Business or the Guarantor using any one or more methods or technologies.

**16. Reservation of Rights.** We will not be deemed to have waived any of our rights by delaying the enforcement of any of our rights. If we waive any of our rights on one occasion, that waiver will not constitute a waiver by us of our rights on any future occasion. We will be under no duty to enforce payment of the amount owed us under this Loan Agreement by exercising any of our rights under this Loan Agreement.

**17. Limitation of Liability. To the maximum extent permitted by applicable law, we and our Affiliates will not be liable to the Business or any Guarantor for any indirect, incidental, special, consequential, or exemplary damages (including damages for loss of profits, goodwill, use, or data), even if we or our Affiliates have been advised of the possibility of such damages or losses. We and our Affiliates will not be liable for any delay or failure to perform any obligation under these terms based on reasons, events, or other matters beyond our reasonable control. In any event, our maximum aggregate liability under this Loan Agreement is $100.**

**18. Disputes. Any dispute or claim relating in any way to this Loan Agreement will be resolved by binding arbitration, rather than in court,** and administered by the American Arbitration Association (AAA). The Federal Arbitration Act and federal arbitration law apply to this agreement.**The Business, Guarantor and we agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated, or representative action. There is no judge or jury in arbitration, and court review of an arbitration award is limited. An arbitrator can, however, award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Loan Agreement as a court would.**All proceedings must be conducted in accordance with the AAA Commercial Arbitration Rules, and the AAA Expedited Procedures; the Procedures for Large, Complex Commercial Disputes do not apply. The hearing will be in Seattle, Washington. The arbitrator may award to the prevailing party, if any, as determined by the arbitrator, all pre-award expenses of the arbitration, including the arbitrators' fees, administrative fees, travel expenses, court or AAA costs, witness fees, and reasonable attorneys' fees. If for any reason a claim proceeds in court rather than in arbitration, the Business, Guarantor, and **we each waive any right to a jury trial.**

To begin an arbitration proceeding, the Business or Guarantor must send a letter requesting arbitration and describing its claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. Instructions for filing an arbitration demand with the AAA are available at www.adr.org.

**19. Governing Law.** The Federal Arbitration Act, applicable federal law and the laws of the state of Washington, without regard to the conflict of laws principles, will govern this Loan Agreement and any dispute of any sort that might arise between the Business, any Guarantor and us. This Loan Agreement is entered into between the Business, any Guarantor and us in the state of Washington.

**20. Privacy Notice.** As a subsidiary of Amazon.com, Inc., Amazon Capital Services, Inc. follows the same information practices as Amazon.com, Inc., and information we collect from the Business and the Guarantor, is subject to the Amazon.com Privacy Notice (the "Privacy Notice"), current version of which is located at:http://www.amazon.com/privacy

**21. Credit Bureau Notice.** We may report information about the Business's Loan to credit bureaus. Late payments, missed payments, or other defaults on the Business's Loan may be reflected in the Business's credit report. In underwriting and approving the Loan, we reserve all rights to conduct credit checks and financial and legal diligence necessary or desirable to evaluate the creditworthiness of the Business and the Guarantor.

**22. Entire Agreement.** The Business and the Guarantor agree that this Loan Agreement is the entire agreement with respect to the matters set forth herein and no oral changes can be made.

**23. Oral Agreements. PLEASE BE ADVISED THAT ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

# CONSENT TO ELECTRONIC COMMUNICATIONS

**1. Categories of Communications.** The Business and the Guarantor understand and agree that Amazon Capital Services, Inc., our Affiliates, assignees, agents or other holders of the Loan may provide all communications, notices, and transactions related to the Loan by electronic means, including but not limited to the Loan Agreement and any policies, disclosures, notices, transaction information, statements, responses to communications and customer services claims, notices of default, notices regarding delinquencies, notices for collections and any other notices that we may be required to provide to you by law (collectively, "Communications").

**2. Manner of Electronic Communications.** Communications may be sent to the Primary Contact Email provided in the Application Information or may be provided in Seller Central. All such Communications shall be considered to be "in writing." The Business and the Guarantor acknowledge that by accessing Seller Central, the Business and the Guarantor demonstrate that each can access information that we may provide to the Business and the Guarantor by electronic Communications.

**3. Copies of Communications and Withdrawal of Consent.** The Business and the Guarantor are responsible for printing, storing, and maintaining their own records of such Communications. The Business or the Guarantor may withdraw consent to electronic disclosures by contacting us at amazon-lending@amazon.com, however, withdrawal of consent to electronic disclosures may result in termination of our relationship with the Business and we may consider this Loan immediately due and payable.

**4. Electronic Signatures.** The Business and the Guarantor acknowledge that by clicking on the "I Agree", the "Submit" or similar button on the application page or elsewhere on the lending landing page of the Seller Central website, the Business and the Guarantor are indicating their intent to sign the relevant document or record and that this will constitute the signature of the Guarantor and an authorized individual of the Business.

# TERMS AND CONDITIONS FOR AUTOMATIC ACH PAYMENT OPTION

These terms and conditions (the "Terms and Conditions") govern the Business's use of the automatic ACH payment option as described herein and apply if the Business elects to enable automatic debit payments.

**1. ACH Payment Option.** The Business authorizes us to debit the Business's designated financial institution account ("Payment Account") to make one or more payments, as necessary, against any outstanding balance due on the Loan (the "ACH Payment Option"). The Business further authorizes us to debit or credit its Payment Account to correct any erroneous debit, make necessary adjustments to its payments, or to issue a refund back to its Payment Account. The Payment Account must be an account established for commercial or business purposes and must not be used primarily for personal, family, or household purposes, and it must be able to accept debits denominated in US currency.

**2. Acceptance of Terms and Conditions.** By using the ACH Payment Option, the Business agrees to these Terms and Conditions, and authorizes us (or our agent) to make any inquiries we consider necessary to validate the bank account or any dispute involving payment, including performing credit checks or verifying information with third parties. We may update these Terms and Conditions at any time, and by continuing to use the designated bank account as a payment method, the Business accepts these updated Terms and Conditions.

**3. Returned Payments.** If any payment using your Payment Account is returned unpaid (for example, if you have insufficient funds available), we may retry the payment. Your bank may charge you an overdraft or other fee for each payment failure. You are responsible for any such fees.

# PERSONAL GUARANTY

**This Section, and all references to Guarantor in this Agreement, is applicable only if we request a Guarantor for the Loan. The Loan Agreement documentation will indicate whether there is a Guarantor.**
As used in this Section, "you" means the person applying for the Loan, and you certify that you are an owner, sole proprietor, principal or authorized representative of the Business and are duly authorized by the Business to apply for this Loan and execute and deliver the Loan Agreement.

You certify that you are at least 18 years old and are the Guarantor of all indebtedness, liabilities and obligations of the Business to Amazon under the Loan Agreement, whether presently existing or hereafter arising (the "Guaranteed Obligations"), that you authorize the Personal Guaranty, and that you agree to the Consent to Electronic Communications as the Guarantor.

The Guarantor unconditionally and irrevocably guarantees the Guaranteed Obligations, together with all expenses we incur relating to collection of the Guaranteed Obligations, including reasonable attorneys' fees.

The Guarantor understands that we may proceed directly against the Guarantor in their individual or personal capacity without first exhausting our remedies against the Business or any other person or any security held by us or any guarantor, and that this Personal Guaranty will not be affected by failure by us to enforce any rights or remedies we may have against the Business.

The Guarantor waives (i) all defenses of the Business pertaining to the duties and obligations of the Business (including discharge in bankruptcy), any evidence thereof, and any security therefor, except the defense of discharge by payment; (ii) all defenses of a surety to which the Guarantor may be entitled by statute or otherwise; (iii) notice of acceptance of this Personal Guaranty and of the creation and existence of the duties and obligations of the Guarantor hereunder; (iv) presentment, demand for payment, notice of dishonor, notice of non-payment, and protest of any instrument evidencing the duties and obligations of the Business; (v) all other demands and notices to the Guarantor or any other person and all other actions to establish the liability of the Guarantor; and (vi) **the right to trial by jury in any action in connection with this Personal Guaranty. Guarantor agrees to the Dispute provisions in Section 18 of the Loan Agreement with the same force and effect on any dispute or claim relating in any way to this Personal Guaranty and Guarantor.**

Any indebtedness the Business may owe to the Guarantor is hereby subordinated to the payment of the Guaranteed Obligations. The Guarantor agrees that after any default by the Business under the Loan Agreement, it will hold any funds received from the Business in trust for us to satisfy the obligations of the Business to us under the Loan Agreement, and will promptly pay those funds to us. Until the Guaranteed Obligations are fully satisfied, Guarantor waives all rights of subrogation, contribution, indemnification, exoneration, or reimbursement the Guarantor may have against the Business arising from the existence of this Personal Guaranty.

Nothing, except full payment and discharge of all of the Guarantor's duties and obligations to us, which but for this provision could act as a release or impairment of the liability of the Guarantor, will in any way release, impair, or affect the liability of the Guarantor. The Guarantor hereby consents that we may without further consent or disclosure and without affecting or releasing the obligations of Guarantor hereunder: (a) surrender, exchange, release, assign, or sell any collateral or waive, release, assign, sell, or subordinate any security interest; (b) waive or delay the exercise of any of our rights or remedies against the Business; (c) waive or delay the exercise of any of our rights or remedies in respect of any collateral or security interest now or hereafter held; (d) renew, extend, waive or modify the terms of any obligation, or any instrument or agreement evidencing the same; (e) renew, extend, waive or modify the terms of any security document; (f) apply payments received from the Business or any surety or guarantor or from any collateral, to any indebtedness, liability, or obligations of the Business or such sureties or guarantors whether or not a Guaranteed Obligation hereunder; and (g) realize on any security interest, judicially or nonjudicially, with or without preservation of a deficiency judgment.

This Personal Guaranty will not be discharged or affected by the death of the Guarantor, will bind all heirs, administrators, representatives, and assigns, and may be enforced by or for the benefit of any successors in interest to us. The Guarantor may not assign or otherwise transfer all or any part of its rights or obligations hereunder.

Guarantor represents and warrants as follows:

(a) The execution, delivery and performance by Guarantor of this Personal Guaranty do not and will not (i) conflict with or contravene any law, rule, regulation, judgment, order, or decree of any government, governmental instrumentality or court having jurisdiction over Guarantor or Guarantor's activities or properties, (ii) conflict with, or result in any default under, any agreement or instrument of any kind to which Guarantor is a party or by which Guarantor or any of Guarantor's properties may be bound or affected or (iii) require the consent, approval, order, or authorization of, or registration with or the giving of notice to any United States or other governmental authority or any person or entity not a party to the Loan Documents;

(b) This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms;

(c) There is no action, litigation or other proceeding pending or to Guarantor's knowledge threatened against Guarantor before any court, arbitrator or administrative agency that may have a material adverse effect on the assets or the business or financial condition of Guarantor or that would prevent, hinder or jeopardize the performance by Guarantor of Guarantor's obligations under this Guaranty;

(d) Guarantor is not party to any contract, agreement, indenture or instrument, or subject to any restriction individually or in the aggregate that would have a material adverse effect on Guarantor's financial condition or business or that would in any way jeopardize the ability of Guarantor to perform under this Guaranty.

Guarantor acknowledges that we are making credit accommodations to the Business with reliance on the truth and accuracy of Guarantor's representations set forth above, and Guarantor's enforceable Guaranty is an inducement for us to make such credit accommodations.

U210044831327



## STATE OF CALIFORNIA
*Office of the Secretary of State*
## UCC FINANCING STATEMENT (UCC 1)
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File #: U210044831327 |
| Date Filed: 5/8/2021 |

**Submitter Information:**

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 GLENDALE, CA 912099071 |

**Debtor Information:**

| Debtor Name | Mailing Address |
|---|---|
| OKAYSOU CORPORATION | 201 EAST CHAPMAN AVE 43G PLACENTIA CA PLACENTIA, CA 92870 |

**Secured Party Information:**

| Secured Party Name | Mailing Address |
|---|---|
| AMAZON CAPITAL SERVICES, INC. | 410 TERRY AVE. N. SEATTLE, WA 98109 |

**Indicate how documentation of Collateral is provided:**
Entered as Text

**Description:**
The Collateral is all of the following property the debtor now owns or may acquire in the future: (i) all inventory at any time stored for the debtor or the debtor's affiliate accounts in Amazon fulfillment centers, wherever found, (ii) any right, title or interest in the debtor's Seller Account, as well as any other Amazon seller accounts affiliated with the debtor, (iii) all Accounts, Chattel Paper, Deposit Accounts, Documents, Instruments, Investment Property, or Payment Intangibles, (iv) all Equipment, Goods, Inventory and other tangible personal property located in the United States, (v) any books and records pertaining to the Collateral, and (vi) any insurance, proceeds or products of the foregoing.

**Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:**
Not Applicable

**Select an alternate Financing Statement type:**

**Select an additional alternate Financing Statement type:**

**Select an alternative Debtor/Secured Party designation for this Financing Statement:**

**Optional Filer Reference Information:**
80385294

B0392-4364 05/08/2021 1:04 AM Received by California Secretary of State

EXHIBIT 2

## Okaysou Corp - 90 Day Budget

| Date | 07/01/23 | 08/01/23 | 09/01/23 | Total |
|---|---|---|---|---|
| **Expenses** | | | | |
| **Cost of Goods Sold** | | | | |
| Direct Labor | - | - | - | - |
| Finished Goods | - | - | - | - |
| Freight - Foreign | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Overhead | 1,500.00 | 1,500.00 | 1,500.00 | 4,500.00 |
| Purchases | - | - | - | - |
| Supplies | - | - | - | - |
| **Total Cost of Goods Sold** | 5,000.00 | 5,000.00 | 5,000.00 | 15,000.00 |
| **Operating Expenses** | | | | |
| Administrative | 30,000.00 | 15,000.00 | 15,000.00 | 60,000.00 |
| Bank Charges | 400.00 | 400.00 | 400.00 | 1,200.00 |
| Insurance | - | - | - | - |
| Marketing Technology - Google | 7,500.00 | 7,500.00 | 7,500.00 | 22,500.00 |
| Marketing Technology - Wickfire | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Miscellaneous | 350.00 | 350.00 | 350.00 | 1,050.00 |
| Office Supplies | 200.00 | 200.00 | 200.00 | 600.00 |
| Rent | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Sales Commissions - Online | 6,416.00 | 6,416.00 | 6,416.00 | 19,248.00 |
| Shipping - International & Local | 12,700.00 | 12,700.00 | 12,700.00 | 38,100.00 |
| Security (ADT) | 250.00 | 250.00 | 250.00 | 750.00 |
| Third-Party Warehouse | 25,000.00 | 13,104.00 | 13,104.00 | 51,208.00 |
| Utilities | 1,100.00 | 1,100.00 | 1,100.00 | 3,300.00 |
| Total Operating Costs | 90,916.00 | 64,020.00 | 64,020.00 | 218,956.00 |
| **Total Expenses** | **95,916.00** | **69,020.00** | **69,020.00** | **233,956.00** |

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Vahe Khojayan SBN261996**<br>**YK Law, LLP**<br>**445 S. Figueroa Street, Ste 2280**<br>**Los Angeles, CA 90071**<br>**213-401-0970 Fax: 213-529-3044**<br>California State Bar Number: **SBN261996 CA**<br>**vkhojayan@yklaw.us** | **FILED & ENTERED**<br><br>**JUN 29 2023**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY hawkinso DEPUTY CLERK<br><br>**CHANGES MADE BY COURT** |

☐ *Individual appearing without attorney*
☒ *Attorney for: Debtor in possession*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| In re:<br><br>**Okaysou Corporation** | CASE NO.: **6:23-bk-11535-MH**<br>CHAPTER: **11** |
|---|---|
| | **ORDER:**<br><br>☒ **GRANTING APPLICATION AND SETTING HEARING ON SHORTENED NOTICE**<br><br>☐ **DENYING APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE**<br><br>**[LBR 9075-1(b)]** |
| Debtor(s) | |

**Movant** (name): Okaysou Corporation

1. Movant filed the following motion together with supporting declarations and (if any) supporting documents:

    a. *Title of motion:* __Motion to Use Cash Collateral__

    b. *Date of filing of motion:* __06/27/2023__

2.  Pursuant to LBR 9075-1(b), movant also filed an Application for Order Setting Hearing on Shortened Notice (Application) together with supporting declaration(s):

    *Date of filing of Application:* __06/27/2023__

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                                   Page 1                    **F 9075-1.1.ORDER.SHORT.NOTICE**

3. Based upon the court's review of the application, it is ordered that**:**

a. ☐ The Application is denied.  The motion may be brought on regular notice pursuant to LBRs.

b. ☒ The Application is granted, and it is further ordered that**:**

(1) ☒ A hearing on the motion will take place as follows:

| | |
|---|---|
| **Hearing Date:  7/11/2023** | **Place:** |
| | ☐ **255 East Temple Street, Los Angeles, CA 90012** |
| **Time:  2:00 p.m.** | |
| | ☐ **21041 Burbank Boulevard, Woodland Hills, CA 91367** |
| **Courtroom:  301** | |
| | ☒ **3420 Twelfth Street, Riverside, CA 92501** |
| | ☐ **411 West Fourth Street, Santa Ana, CA 92701** |
| | ☐ **1415 State Street, Santa Barbara, CA 93101** |

(2) ☒ No later than the deadlines given, **telephonic notice** of the hearing must be provided to all persons/entities listed:

| (A) _Deadlines:_ | (B) _Persons/entities to be provided with telephonic notice:_ |
|---|---|
| Date:  **June 29, 2023** | **-All secured creditors, and counsel if known** |
| | **-UST** |
| Time:  **5:00 p.m.** | |
| | ☐ See attached page |
| | (C) _Telephonic notice is also required upon_ the United States trustee |

(3) ☒ No later than the deadlines given, **written notice of the hearing** and a **copy of this order** must be served upon all
persons/entities listed using: ☐ one of the methods checked ☒ all of the methods checked

(A) ☐ Personal Delivery   ☒ Overnight Mail   ☐ First class mail   ☐ Facsimile*   ☒ Email*

| (B) _Deadlines:_ | (C) _Persons/entities to be served with written notice and a copy of this order:_ |
|---|---|
| Date:  **June 29, 2023** | **-All secured creditors, and counsel if known** |
| | **-UST** |
| Time:  **5:00 p.m.** | |
| | ☐ See attached page |
| | (D) _Service is also required upon:_ |

(4) ☒ No later than the deadlines given, a copy of the motion, declarations, and supporting documents (if any), must be served on all
persons/entities listed using: ☐ one of the methods checked ☒ all of the methods checked

(A) ☐ Personal Delivery   ☒ Overnight Mail   ☐ First class mail   ☐ Facsimile*   ☒ Email*

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                                        Page 2                          **F 9075-1.1.ORDER.SHORT.NOTICE**

| (B) _Deadlines:_ | (C) _Persons/entities to be served with motion, declarations, supporting documents:_ |
|---|---|
| Date: **June 29, 2023**<br><br>Time: **5:00 p.m.** | **-All secured creditors, and counsel if known**<br>**-UST**<br><br><br>☐ See attached page |
| | (D) _Service is also required upon:_ |

(5) ☒ Regarding **opposition to the motion**:

    ☐ opposition to the motion may be made **orally** at the hearing

    ☒ no later than the deadlines given, **written opposition to the motion** must be filed with the court and served upon all person/entities listed using: ☐ one of the methods checked ☒ all of the methods checked

    (A) ☐ Personal Delivery  ☒ Overnight Mail  ☐ First class mail  ☐ Facsimile*  ☒ Email*

| (B) _Deadlines:_ | (C) _Persons/entities to be served with written opposition to the motion:_<br>-- Movant's attorney |
|---|---|
| Date: **July 10, 2023**<br><br>Time: **12:00 p.m.** | |
| | (D) _Service is also required upon:_<br>-- United States trustee (_electronic service is not permitted_) |

(6) ☒ Regarding a **reply to an opposition**:

    ☒ a reply to opposition may be made **orally** at the hearing.

    ☐ no later than the deadlines given, a **written reply to an opposition** must be filed with the court and served on all person/entities listed using: ☐ one of the methods checked ☐ all of the methods checked

    (A) ☐ Personal Delivery  ☐ Overnight Mail  ☐ First class mail  ☐ Facsimile*  ☐ Email*

| (B) _Deadlines:_ | (C) _Persons/entities to be served with written reply to opposition:_<br>-- All person/entities who filed a written opposition |
|---|---|
| Date:<br><br>Time: | |
| | (D) _Service is also required upon:_<br>-- United States trustee (_electronic service is not permitted_)<br>-- Judge's copy personally delivered to chambers<br>   (_see Court Manual for address_) |

(7) ☐ Other requirements:

(8) ☒ No later than the deadlines given, movant must file a **Declaration of Notice and Service** establishing that telephonic notice, written notice, and service of the motion and this order was completed as set forth above, and a **judge's copy** of the Declaration of Notice and Service must be personally delivered to the Judge's chambers:

| ☒ at least 2 days before the hearing. |
|---|

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| ☐ no later than: | Date: | Time: |
|---|---|---|

*Service by electronic means (facsimile or email) requires compliance with F.R.Civ.P.5(b)(2)(E).

### 

Date: June 29, 2023

_Mark Houle_
Mark Houle
United States Bankruptcy Judge

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_December 2013_                                    Page 4                    **F 9075-1.1.ORDER.SHORT.NOTICE**

Vahe Khojayan  (SBN 261996)
YK LAW, LLP
445 S. Figueroa Street, Ste 2280
Los Angeles, CA 90071
Tel: (213) 401-0970
Fax: (213) 529-3044
Email: vkhojayan@yklaw.us

Attorneys for debtor-in possession
OKAYSOU CORPORATION

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>**OKAYSOU CORPORATION**<br><br>Debtor-in-possession | Case Number: **6:23-bk-11535-MH**<br><br>Chapter 11<br><br>**NOTICE OF ERRATA**<br><br>Hearing Date:<br><br>Date: July 11, 2023<br>Time: 2:00PM<br>Courtroom 301, 3420 Twelfth Street,<br>Riverside, CA 92501 |

PLEASE TAKE NOTICE that the **DEBTOR'S MOTION FOR ORDER  (1) AUTHORIZING USE OF CASH COLLATERAL;  (2) REQUIRING AMAZON TO TURN OVER ACCOUNT CREDENTIALS AND ACCUMULATED FUNDS TO DEBTOR** ( "Motion"), filed with this court as docket no. 38 contained an incomplete Exhibit 2. A correct Exhibit 2 is attached hereto.

Date: 06/29/2023                      YK Law, LLP


By:_____/s/ Vahe Khojayan_____
              Vahe Khojayan

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**445 S. Figueroa Street, Ste 2280**
**Los Angeles, CA 90071**

A true and correct copy of the foregoing document entitled (*specify*): ___**Notice of Errata**___ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On __06/29/2023___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Abram Feuerstein, esq on behalf of U.S. Trustee United States Trustee (RS): abram.s.feuerstein@usdoj.gov**

**Everett L Green on behalf of U.S. Trustee United States Trustee (RS): everett.l.green@usdoj.gov**

**Vahe Khojayan on behalf of Debtor Okaysou Corporation: vkhojayan@yklaw.us**

**Yi Hui Lee on behalf of Interested Party Party Interested: mlee@yklaw.us**

**Cameron C Ridley on behalf of U.S. Trustee United States Trustee (RS): Cameron.Ridley@usdoj.gov**

**Allan D Sarver on behalf of Interested Party Party Interested: ADS@asarverlaw.com**

**Raymond Trojan on behalf of Interested Party Party Interested: trojan@trojanlawoffices.com**

**United States Trustee (RS): ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On __06/29/2023___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on __06/29/2023___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

> **Email: to Attorneys for Amazon Capital Services, Inc.:** Mike.Gearin@klgates.com, Brian.Peterson@klgates.com, Denise.Lentz@klgates.com
>
> **Email to UST**: Cameron.Ridley@usdoj.gov
>
> **Overnight mail to: United States Trustee 801 University Ave # 720, Riverside, CA 92501,**
>
> **Amazon Capital Services, Inc., 410 TERRY AVENUE NORTH, SEATTLE, WA 98109**
>
> **Amazon Capital Services, Inc.  c/o CORPORATION SERVICE COMPANY, 300 DESCHUTES WAY SW,  STE 208 MC-CSC1, TUMWATER, WA, 98501**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 06/29/2023 | Tina Chenorjoukian | /s/ Tina Chenorjoukian |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**NOTICE OF ERRATA**

- 2 -

# EXHIBIT 2

**Okaysou Corp - 90 Day Budget**

| Date | 07/01/23 | 08/01/23 | 09/01/23 | Total |
|------|----------|----------|----------|-------|
| **Revenue** | | | | |
| Amazon | 128,996.85 | 105,793.70 | 174,860.46 | 409,651.01 |
| **Total Revenue** | **128,996.85** | **105,793.70** | **174,860.46** | **409,651.01** |
| **Expenses** | | | | |
| **Cost of Goods Sold** | | | | |
| Direct Labor | - | - | - | - |
| Finished Goods | **-** | **-** | **-** | **-** |
| Freight - Foreign | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Overhead | 1,500.00 | 1,500.00 | 1,500.00 | 4,500.00 |
| Purchases | - | - | - | - |
| Supplies | - | - | - | - |
| **Total Cost of Goods Sold** | 5,000.00 | 5,000.00 | 5,000.00 | 15,000.00 |
| **Operating Expenses** | | | | |
| Administrative | 30,000.00 | 15,000.00 | 15,000.00 | 60,000.00 |
| Bank Charges | 400.00 | 400.00 | 400.00 | 1,200.00 |
| Insurance | - | - | - | - |
| Marketing Technology - Google | 7,500.00 | 7,500.00 | 7,500.00 | 22,500.00 |
| Marketing Technology - Wickfire | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Miscellaneous | 350.00 | 350.00 | 350.00 | 1,050.00 |
| Office Supplies | 200.00 | 200.00 | 200.00 | 600.00 |
| Rent | 3,500.00 | 3,500.00 | 3,500.00 | 10,500.00 |
| Sales Commissions - Online | 6,416.00 | 6,416.00 | 6,416.00 | 19,248.00 |
| Shipping - International & Local | 12,700.00 | 12,700.00 | 12,700.00 | 38,100.00 |
| Security (ADT) | 250.00 | 250.00 | 250.00 | 750.00 |
| Third-Party Warehouse | 25,000.00 | 13,104.00 | 13,104.00 | 51,208.00 |
| Utilities | 1,100.00 | 1,100.00 | 1,100.00 | 3,300.00 |
| Total Operating Costs | 90,916.00 | 64,020.00 | 64,020.00 | 218,956.00 |
| **Total Expenses** | **95,916.00** | **69,020.00** | **69,020.00** | **233,956.00** |
| **Income** | **33,080.85** | **36,773.70** | **105,840.46** | **175,695.01** |