R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Emi Shibata, CA Bar No. 275,069
shibata@trojanlawoffices.com

TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Tel: 310-777-8399; Fax: 310-777-8348
Attorneys for Creditors,
Etekcity Corporation and Arovast Corporation

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>OKAYSOU CORPORATION,<br><br>Debtor. | Case No.: 6:23-bk-11535-MH<br><br>**NOTICE OF MOTION AND MOTION OF UNSECURED CREDITORS ETEKCITY CORPORATION AND AROVAST CORPORATION FOR (1) RESOLUTION OF THE CHAPTER 7 TRUSTEE ELECTION DISPUTE AND (2) ORDER FOR SUBSTANTIVE CONSOLIDATION**<br><br>[No Hearing Set] |

1

**PLEASE TAKE NOTICE** that as soon as the matter may be heard (the "Hearing") before the Honorable Mark Houle, United States Bankruptcy Judge, in Courtroom 301, located at 3420 Twelfth Street, Riverside, CA, the Bankruptcy Court will consider and act upon the motion of Unsecured Creditors Etekcity Corporation and Arovast Corporation for (1) Resolution of the Chapter 7 Trustee Election Dispute and (2) Order for Substantive Consolidation (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice and Motion, the attached Memorandum of Points and Authorities and Declaration of Emi Shibata, the records and files in the above-captioned chapter 7 case, and such additional evidence and argument as may be presented at or before the Hearing.

**PLEASE TAKE FURTHER NOTICE** that a formal response to the Motion must be filed with the Bankruptcy Court and served on counsel for the Unsecured Creditors Etekcity Corporation and Arovast Corporation ("Etekcity and Arovast" or "Voting Creditors") no later than fourteen (14) days after service. Pursuant to Bankruptcy Rule 9013-1(c), failure to file and serve timely a response in accordance with the Local Bankruptcy Rules may be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in the Motion.

DATED: March 22, 2024                    **TROJAN LAW OFFICES**

By: /s/ R. Joseph Trojan

R. Joseph Trojan
Attorney for Unsecured Creditors
Etekcity Corporation and
Arovast Corporation

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  CONTROLLING STATUTE AND RULES

**A.  ELECTION OF CHAPTER 7 TRUSTEE**

The procedure for requesting an election is governed by 11 U.S.C. § 702.1. Summarized, that section states:

(a) A creditor may vote for a candidate for trustee only if such creditor (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under §§ 726(a)(2), 726(a)(3), 726(a)(4),752(a), 766(h), or 766(i); (2) does not have an interest materially adverse to other unsecured creditors; and (3) is not an insider.

(b) An election may be held at the meeting of creditors if requested by at least 20% in amount of the holders of eligible unsecured creditors (quorum requirement).

(c) A candidate is elected if (a) at least 20% in amount of eligible creditors vote at the election; and (b) receives the vote of a majority in amount of claims held by creditors who vote..

(d) If a candidate is not elected, the interim trustee (appointed by the UST) becomes the trustee.

Federal Rule of Bankruptcy Procedure 2003(b)(3)4 then addresses the right to vote. That Rule provides in part:

Right to Vote. In a chapter 7 liquidation case, a creditor is entitled to vote ... if, at or before the meeting, the creditor has filed a proof of claim..., unless objection is made to the claim or the proof of claim is insufficient on its face. ... In the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the

3

court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court.

Finally, Rule 2003(d) addresses the report of election. Subsection (d)(2), report of disputed election, provides in part:

> (2) Disputed Election. If the election is disputed, the United States trustee shall promptly file a report stating that the election is disputed, informing the court of the nature of the dispute, and listing the name and address of any candidate elected under any alternative presented by the dispute. ... Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. Unless a motion for the resolution of the dispute is filed no later than 14 days after the United States trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case.

B.　**SUBSTANTIVE CONSOLIDATION**

The power of the court to order substantive consolidation is embodied in 11 U.S.C.A. § 105(a) which states:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

## II. FACTUAL BACKGROUND

### A. CASE CONVERSION FROM CHAPTER 11 TO CHAPTER 7

On December 1, 2023, the Official Committee of Unsecured Creditors (the "UCC") filed the Motion of the Official Committee of Unsecured Creditors for Order (1) Appointing a Chapter 11 Trustee, or (2) Converting the Case to Chapter 7 (the "UCC Motion"). (Doc 136.) In response to the UCC Motion, Debtor did not dispute any of the serious factual allegations of postpetition fraud and gross mismanagement, which included, *inter alia*, misrepresenting Debtor's former CFO and insider, Mr. John Cao, as a creditor without disclosing him as a former officer, failing to disclose the hundreds of thousands of dollars of insider transfers to Mr. Cao prepetition in Debtor's initial bankruptcy disclosures, and allowing hundreds of thousands of dollars to be transferred to Mr. Cao and/or his companies postpetition. (Doc 150, pp. 2-3.) A hearing was held on December 19, 2023, and the court subsequently converted this case from Chapter 11 to Chapter 7 and ordered the appointment of a trustee. (Doc 158.)

### B. POST-CONVERSION DISCOVERY OF ONGOING FRAUD

Post-conversion, evidence of fraud continued to emerge, the most serious of which was evidence that Debtor's counsel, who worked closely with Debtor's CEO, Mr. Henry Hao Ma, and Debtor's former CFO and now purported creditor, Mr. John Fudong Cao, prepetition, was still working with not only Mr. Ma but Mr. Cao as well postpetition.

#### 1. **Debtor's Counsel Has Been Representing Both Debtor and John Cao All Along**

In the FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF YK LAW, LLP that Debtor's counsel filed on December 17, 2023 (the "Fee Application"), there is an entry for Henry Li, a partner of Debtor's counsel's law firm YK Law, dated April 26, 2023, which bills 0.8 hours for,

5

1 "Attending two calls w/ Henry; **Attending a call and messages w/ John explaining the procedure**" (emphasis added).  (Doc 163, p. 22; relevant screenshot below.)

| 04/26/2023 | HL | Henry Li | Case Administration | Attending two calls w/ Henry; Attending a call and messages w/ John explaining the procedure. | 500.00 | 0.8 |

According to Debtor's Status Report dated May 16, 2023, Debtor was allegedly forced to file for bankruptcy on April 17, 2023, due to "**Chinese supplier Fud[o]ng John Cao**" (emphasis added) threatening to cut off access to Debtor's funds and proceeds of sales.  (Doc 16, p. 2.)  Yet, here is evidence of Debtor's counsel explaining the bankruptcy procedure to the purported hostile creditor John Cao the week after filing for bankruptcy.  Henry Li, and another YK Law attorney Michael DiNardo, represented Debtor prepetition to defend Okaysou against Etekcity and Arovast in a patent litigation proceeding and regularly communicated with both Henry Ma and John Cao.  (Shibata Declaration ("Shibata Decl.") ¶ 2.)

Debtor's counsel's above communication with John Cao directly contradicts their statement of May 11, 2023 wherein they state, "To the best of Debtor's knowledge and **based on declaration of Vahe Khojayan neither YK Law, LLP nor any of the attorneys comprising or employed by it have any connection with the creditors** or any other party in interest or their respective attorneys" (emphasis added).  (Doc 13, p. 6, NOTICE OF APPLICATION BY DEBTOR IN POSSESSION FOR AUTHORITY TO EMPLOY ATTORNEY ON GENERAL RETAINER.)

If John Cao truly is a rogue creditor who was enough of a threat to Debtor to necessitate bankruptcy filing, then the above declaration is false, and YK Law had and still has a connection with a creditor.  On the other hand, if John Cao is not a creditor, and is still in control of Debtor, the entire bankruptcy case is fraudulent.

6

2. **Debtor's Counsel Knew of Debtor's Bankruptcy Disclosure Deficiencies**

The same Fee Application also contains evidence that Debtor's counsel was complicit in the omissions and misrepresentations made in Debtor's initial bankruptcy disclosures. That is, there is an entry for Michael DiNardo, another partner of Debtor's law firm, dated April 18, 2023, which bills 0.5 hours for, "**Conference with Vahe re preparation of bankruptcy petition; review CA Secretary of State records re same.**" (Doc 163, p. 22; relevant screenshot below).

| 04/18/2023 | MD | Michael DiNardo | Case Administration | Conference with Vahe re preparation of bankruptcy petition; review CA Secretary of State records re same | 500.00 | 0.5 |

As explained in the UCC Motion, Debtor removed its CFO Mr. John (Fudong) Cao and Secretary Mr. Peter (Tiansai) Pang from its California Secretary of State Business Registry on April 17, 2023, the same day it filed its bankruptcy petition. In the same Statement of Information, it listed Mr. Henry (Hao) Ma, formerly CEO, as CEO/CFO/Secretary. (Doc 136, Ex. E, pp. 133-138.) Then, in its subsequent bankruptcy schedules filed May 1, 2023, Debtor failed to disclose Mr. John Cao and Mr. Peter Pang as former officers and insiders. (Doc 12.)

Not until creditors pointed out this and other omissions during the first Meeting of Creditors on May 17, 2023, did Debtor admit that Mr. John Cao was an insider who "**had full access to debtor's bank accounts and its Amazon and Shopify accounts through which debtor was selling its products**," had diverted funds prepetition, and that Debtor may have interest in Mr. Cao's other companies, including Atomee Corporation. (Doc 19, Debtor's Supplemental Status Report).

Because Debtor's prepetition counsel and postpetition counsel worked together on Debtor's bankruptcy filings, they must have been fully aware of all disclosure deficiencies.

7

3. **Debtor's Counsel Filed Fraudulent Trademark Infringement Lawsuit**

In the abovementioned Fee Application, Debtor's counsel also requested $35,125.00 in fees related to a trademark infringement case that they filed on November 16, 2023 in the Northern District of Illinois. (Doc 163, p.11.) This infringement lawsuit, filed on November 16, 2023, is in a word fraudulent.

Debtor's counsel filed this lawsuit against Debtor's own affiliate company Atomee Corporation and its *own sales channels*, claiming that they are unknown counterfeiters. The complaint states, "**Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff**." It goes on to claim, "**Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.**" (Shibata Decl. ¶ 3, Ex. 1, p. 3, "OKAYSOU CORPORATION, a California Corporation, Plaintiff, V. THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" a Foreign Entity Defendants.")

The list of the "unknown infringers" and their sales channels, filed under seal as Exhibit A titled, "**Fully interactive e-commerce stores operating under the seller aliases**" include Debtor's affiliate Atomee Corporation, and Debtor's former *main* Shopify website www.okaysou.com, as well as multiple other Shopify stores such as www.okaysoubrand.com, www.okaysoustore.com, www.shopokaysou.com, and www.okaysoupro.com. (*Id.* at p. 18.) These same websites are listed as those owned by Debtor in its amended schedules filed June

8

6, 2023. (Doc 26, p. 6.) It is worth noting that the proceeds from sales via these websites, which could be sizeable, have yet to be recovered for inclusion in Debtor's estate.

**4.    Interim Chapter 7 Trustee Not Prepared to Litigate**

On January 2, 2024, Official Form 309C Notice of Chapter 7 Bankruptcy Case was filed. (Doc 168.) In the Notice, Mr. Larry D Simons was listed as Chapter 7 trustee and immediately reached out to Voting Creditors to initiate a discussion. Counsel for Voting Creditors prepared to share evidence of the abovementioned post-conversion fraud with the trustee. However, the appointment of Larry Simons was subsequently revealed to be a clerical error and the current interim Chapter 7 trustee Mr. Robert S Whitmore was appointed later the same day on January 2, 2024. (Doc 169.)

On January 8, 2024, counsel for Voting Creditors called Mr. Whitmore to discuss the case and the evidence of fraud that emerged post-conversion. (Shibata Decl. ¶ 4.) Mr. Whitmore advised that any investigation would require litigation counsel willing to take on the case on contingency, which he currently did not have, and likely would not happen given the no asset status of the case. Moreover, Mr. Whitmore opined that any judgement obtained from the court as a result of investigations likely could not be collected, since bad actors would no doubt divert assets to offshore accounts where they would be unreachable. *Id.*

On January 9, 2024, counsel for Voting Creditors contacted Mr. Simons to inquire whether he had litigation counsel ready to investigate the case on a contingency basis and he answered affirmatively. (Shibata Decl. ¶ 5.) Thus, based on interactions with both Mr. Whitmore and Mr. Simons, Voting Creditors decided to elect Mr. Simons as the permanent Chapter 7 trustee, and sent an email to the U.S. Trustee's Office to communicate their intent to elect. (Shibata Decl. ¶ 6, Ex. 2.)

9

### III.    ANALYSIS / ARGUMENTS

**A.    VOTING CREDITORS ARE QUALIFIED TO VOTE FOR TRUSTEE**

**1.    <u>Voting Creditors' Claims Were Timely Filed and are Unobjected, Thus Allowed</u>**

To determine whether a claim is allowable, the relevant statute states, "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S. Code § 502(2). Courts have further elaborated that, "To overcome proof of claim, debtors must come forward with some evidence to meet, overcome, or equal the statements in proof of claim." *In re Gorman*, 495 B.R. 823 (Bankr. E.D. Tenn. 2013). That is, if a proof of claim has been timely filed and is unobjected, then even the most restrictive statutory interpretation deems the claim "allowable."

In fact, Courts with a more expansive statutory interpretation deem a claim "allowable" even in the absence of a filed proof of claim. "To hold "allowable" claim, within meaning of bankruptcy statute specifying that only creditors with "allowable" claims are qualified to vote at election of Chapter 7 trustee, creditor need not have filed proof of claim which has been "allowed"; claim may be "allowable" even though it has not yet been "allowed" or even filed as proof of claim. Bankr.Code, 11 U.S.C.A. § 702(a)(1)." *In re Michelex Ltd.*, 195 B.R. 993 (Bankr. W.D. Mich. 1996).

Here, the facts are clear – both Etekcity and Arovast hold timely filed and unobjected claims. As noted in the U.S. Trustee's Report of Disputed Election, Voting Creditors' filed their respective Proof of Claims on August 7, 2023, and to date, no objection to either Proof of Claim has been filed. (Doc 183, p. 4.) Therefore, both proofs of claim are allowable according to any statutory interpretation whether expansive or restrictive.

2.   **<u>Voting Creditors' Claims Supersede Debtor's Schedules, Thus are Undisputed</u>**

Courts have held that a properly filed Proof of Claim supersedes a debtor's filed schedules. "For purposes of calculating universe of general unsecured claims eligible to vote for permanent Chapter 7 trustee, amounts specified in musicians' filed proofs of claim superseded debtor-symphony's scheduled amount for those claims, and thus universe of eligible claims equaled amount of scheduled general unsecured claims plus whatever amounts, if any, were added from musicians' proofs of claim. Bankr.Code, 11 U.S.C.A. § 702(a). *In re San Diego Symphony Orchestra Ass'n*, 201 B.R. 978 (Bankr. S.D. Cal. 1996)  See also *In re Michelex, Ltd.*, 195 B.R. 993, 1008 (Bankr. W. D. Mich. 1996) ("When a proper proof of claim is filed before, or at, the § 341 meeting, it supersedes the debtor's schedules.")

Here, Debtor characterized Voting Creditor's claims as disputed on its schedules. However, Voting Creditors subsequently filed Proofs of Claim superseded those schedules, and Debtor has not objected to the claimed amounts.  Courts have held that even when objections are made, unsupported allegations of dispute are insufficient to disqualify a claimant from voting on election of a permanent Chapter 7 trustee.  "Debtors, simply by scheduling credit card debt as "disputed" without affirmatively asserting in their objection to proof of claim filed by alleged assignee of credit card debt that they owed nothing to alleged assignee or less than the amount claimed, was insufficient to raise dispute as to credit card debt, for purposes of objection to proof of claim." *In re Gorman*, 495 B.R. 823 (Bankr. E.D. Tenn. 2013). "Unsupported allegation of a dispute regarding a claim is insufficient to disqualify claimant from voting on election of permanent Chapter 7 trustee. 11 U.S.C.A. § 702(a)(1)." *In re Barkany*, 542 B.R. 662 (Bankr. E.D.N.Y. 2015).  Thus, Voting Creditors' claims should be deemed undisputed.

### 3. **Voting Creditors' Claims are Based on Past Infringement, Thus are Fixed**

The caselaw is clear that claims are fixed unless they are contingent. "A claim is 'fixed' under § 702(a)(1) so long as it is not a 'contingent' claim." *In re Klein*, 110 B.R. 862, 871 (Bankr.N.D.Ill.1990)" *In re Michelex Ltd.*, 195 B.R. 993, 1008 (Bankr. W.D. Mich. 1996). "'Contingent debt' is one which debtor will be called upon to pay only upon occurrence or happening of extrinsic event which will trigger liability." *In re Mazzeo*, 131 F.3d 295 (2d Cir. 1997). Here, Debtor's infringement of Voting Creditors' patents has already occurred and is not based on the occurrence of some future event. Thus, Voting Creditors' claims are fixed.

The fact that Debtor filed for bankruptcy before Etekcity and Arovast could obtain a judgement does not change the fixed nature of their claims. "Future 'event' whose occurrence is required to make debt noncontingent, for Chapter 13 eligibility purposes, does not mean judicial determination as to liability and relief, inasmuch as claim may be noncontingent even though it has not been reduced to judgment. Bankr.Code, 11 U.S.C.A. §§ 101(5)(A), 109(e)." *In re Mazzeo*, 131 F.3d 295 (2d Cir. 1997). Thus, in this case, Voting Creditors' claims are clearly fixed.

### 4. **Voting Creditors' Claims are Readily Ascertainable, Thus Liquidated**

Courts have held that claims are liquidated so long as they are ascertainable. "As used in bankruptcy context, terms 'liquidated' and 'unliquidated' generally refer to claim's value, and size of corresponding debt, and ease with which that value can be ascertained. … Debt owed by debtor-president for corporation's unremitted state withholding taxes could be readily ascertained from statutory provisions and corporation's tax returns, and thus was 'liquidated'

for purposes of debtor's Chapter 13 eligibility. Bankr.Code, 11 U.S.C.A. § 109(e); N.Y.McKinney's Tax Law § 685(g)." *In re Mazzeo*, 131 F.3d 295 (2d Cir. 1997).

Here, the amount of Voting Creditors' claims is readily ascertainable, since they are based on lost profits resulting from Debtor's patent infringement and can be calculated by multiplying the number of infringing units sold by the lost profit per unit that Voting Creditors have suffered. Thus, Voting Creditors' claims are liquidated for the purposes of this proceeding and the election of the Chapter 7 trustee.

**5.     Voting Creditors' Claims are Not Based on a Written Agreement**

Notwithstanding the above facts, Debtor objected to the election by arguing that Voting Creditors' proof of claims were invalid because they lacked supporting documentation. However, this argument does not apply to the instant case because the claims at issue are not based on a writing such as a bargaining agreement or court judgment, which would have been required to be attached to the proof of claims.

Here, Voting Creditors' claims are unsecured claims, and courts have held that proof of claims for unsecured creditors need not be elaborate documents. "Proofs of claim are not intended to be elaborately detailed documents. As one bankruptcy court has explained, "[a] proof of claim for an unsecured creditor requires little more than a listing of name, address, amount of claim (or a listing as "unliquidated" or "contingent"), and a signature. It should take less than five minutes to fill out." *In re Great W. Cities, Inc.*, 88 B.R. 109, 114 (Bankr.N.D.Tex.1988)." *LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1058 (D.C. Cir. 1992)

Voting Creditors' proof of claims listed their names, addresses, and the amounts of their claims. Therefore, they satisfied the statutory requirements for filing.

13

**B.     SUBSTANTIVE CONSOLIDATION IS NEEDED TO CURE DEBTOR'S APPARENT FRAUD AND ABUSE OF THE BANKRUPTCY PROCESS**

The law is clear that bankruptcy courts have the power to cure abuses of the bankruptcy process by taking any necessary and appropriate action. "**The court may issue any order**, process, or judgment **that is necessary or appropriate to carry out the provisions of this title**. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or **to prevent an abuse of process**." (emphasis added) 11 U.S.C.A. § 105(a).

In the instant case there has been an overwhelming amount of evidence pointing to Debtor's fraudulent misrepresentations from the onset of its Chapter 11 bankruptcy case, through the conversion to Chapter 7, and post-conversion activities. Debtor, aided by Debtor's counsel, has made this a "no asset" proceeding by transferring assets to alter ego entities, and failing to take any effective legal action to recover avoidable and/or unlawful transfers.

Debtor's counsel did the bare minimum to give off the appearance of acting on behalf of Debtor's estate. But all such actions have been nothing more than elaborate legal handwaving, which has only served to give Debtor's insiders time to dissipate the estate's assets with impunity.

For example, on December 13, 2023, Debtor's counsel initiated legal action against Debtor's insiders for postpetition transfers only after the UCC Motion of December 1, 2023, when the threat of conversion became real. In this complaint, Debtor's counsel claims, "**Specifically, there exists such unity of interest among Atomee, Cao and Souxing that the separate personalities of the corporation and the individuals mentioned do not truly**

**exist.**" (Doc 149, p. 3)  Yet, on December 19, 2023, post-conversion, Debtor's counsel moved the court in Illinois for a preliminary injunction stating, "**Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Unauthorized Products.**" (Shibata Decl. ¶ 7, Ex. 3, p. 11, Debtor's MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION.)

Debtor, aided by its counsel has thus abused the bankruptcy process to hide its assets in Debtor's insiders' alter ego businesses to the detriment of its creditors.  The only equitable cure for this malfeasance is the substantive consolidation of Debtor's insiders' assets and Debtor's estate.

### IV.    CONCLUSION

For the foregoing reasons, Etekcity and Arovast respectfully move the court to resolve the disputed trustee election in their favor and uphold the election of Mr. Larry Simons as permanent Chapter 7 Trustee, and to order substantive consolidation of Debtor's insiders' assets and Debtor's estate.

Respectfully submitted,

TROJAN LAW OFFICES
By

Dated: March 22, 2024

/s/ R. Joseph Trojan
R. Joseph Trojan
Attorney for Unsecured Creditors
Etekcity Corporation and
Arovast Corporation