# EXHIBIT 3

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| OKAYSOU CORPORATION,<br>a California Corporation,<br><br>      Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A"<br>a Foreign Entity<br><br>      Defendants | Case No. 1:23-cv-16044<br><br><br>Hon. Robert W. Gettleman |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff OKAYSOU CORPORATION ("Plaintiff") submits this Memorandum in support of its Motion for Preliminary Injunction.

## MEMORANDUM OF LAW

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting injunctive relief based on an action for trademark infringement against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Plaintiff is the owner of intellectual property, namely trademarks – registered and unregistered – for use with household appliances including but not limited to air purifiers, personal blenders, and related products.  Plaintiff's trademarks – OKAYSOU, APOLLO, and CAYMAN – serve to distinguish its products from those of others in the marketplace.

Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of one or more of Plaintiff's registered and unregistered trademarks (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases and domain names identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them.  Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyright, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this

Court issue a preliminary injunction.

## II.    STATEMENT OF FACTS.

### A.    **Plaintiff's Trademarks.**

Plaintiff is the owner through continuous and systematic use of the marks OKAYSOU, APOLLO, and CAYMAN in United States commerce in connection with air purifiers and other home appliances.  Plaintiff is consistently ranked as top seller on online ecommerce platforms. Since at least as early as August 2017, Plaintiff has continuously and extensively used the OKAYSOU trademark in US commerce in connection with "Air fryers; Air purifiers; Dehumidifiers; Electric egg cookers; Electric kettles; Electric rice cooker; Electric slow cookers; Humidifiers; Humidifiers for household use" ("Plaintiff's Products") as detailed in US Trademark Registration No. 5,708,262, registered since March 26, 2019. (hereinafter "OKAYSOU Reg.") Attached hereto as Exhibit 1 to the declaration of Hao Ma is a true and correct copy of US Trademark Registration No. 5,708,262.

The OKAYSOU Reg. was initially filed in the name of Souxing Information (Chongqing) Technology Co. Ltd. before being assigned to Plaintiff by assigned dated October 26, 2020.  At the time, Souxing and Plaintiff were related entities, and sought to consolidate relevant rights in the United States.  Plaintiff and Souxing have since ended their relationship.

Plaintiff offers and has sold a wide variety of air purifiers, related household appliances and other similar products under the OKAYSOU Reg.  Further, Plaintiff offers and has sold a wide variety of air purifiers, related household appliances and other similar products under the APOLLO and CAYMAN trademarks.  The OKAYSOU, APOLLO, and CAYMAN marks (collectively, "Plaintiff's Marks") are inherently distinctive as applied to air purifiers and other household appliances and serve to distinguish Plaintiff's Products from others in the market.

B. **Defendants' Unlawful Conduct**

As set out above, Plaintiff's use of Plaintiff's Marks in commerce is widespread and substantial in the United States.  In addition to being inherently distinctive as applied to Plaintiff's Products, the Plaintiff's Marks have acquired secondary meaning—i.e., acquired distinctiveness—as a source indicator for Plaintiff's Products by virtue the widespread notoriety and use in commerce of Plaintiff's Marks in sales and advertising.  Defendants have counterfeited Plaintiff's Marks by using identically designed air purifiers and household appliances under the same or similar marks.  (Sealed Exhibit 3 to Declaration of Hao Ma) Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Products to residents of Illinois. *Id.*

Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. *Id.* E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. *Id.* Plaintiff has not licensed defendants to use its marks.  *See,* Declaration of Hao Ma, ¶11.

III. **ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Plaintiff's

trademarks. he entry of a preliminary injunction is appropriate because it would immediately

stop the Defendants from benefiting from the sale of Unauthorized Products, their wrongful use

of the Plaintiff's Trademarks, and preserve the status quo until a the case is completed.

The Court has inherent equity power to enjoin infringement 15 U.S.C. §1114, and false

designations of origin 15 U.S.C. §1125(a) to protect an owner's rights created under federal law

and protect the public from confusion. Defendants' purposeful, intentional, and unlawful conduct

is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill

symbolized by the Plaintiff's Marks.  Rule 65(b) of the Federal Rules of Civil Procedure

provides that the Court may issue an injunction where immediate and irreparable injury, loss, or

damage will result to the applicant before the adverse party or that party's attorney can be heard

in opposition. Fed. R. Civ. P. 65(b). The entry of an injunction is appropriate because it would

immediately stop the Defendants from benefiting from the sale of Unauthorized Products, their

wrongful use of the Plaintiff's Marks, and preserve the status quo until a hearing can be held.

This Court has original subject matter jurisdiction over the claims in this action pursuant

to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)–(b), and 28

U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.  This Court may properly exercise

personal jurisdiction over Defendants since Defendants directly target their business activities

toward consumers in the United States, including Illinois, through at least the fully interactive e-

commerce stores operating under the Seller Aliases.

Specifically, Defendants have targeted sales to Illinois residents by setting up and

operating e-commerce stores that target United States consumers using one or more Seller

Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars

and, on information and belief, have sold Unauthorized Products to residents of Illinois. *See*

Complaint at ¶¶ 18-27. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

A.    **Standard for a Preliminary Injunction.**

A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (*quoting Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

B.    **Plaintiff Will Likely Succeed on Its Trademark Infringement and Unfair Competition Claims**

Both a Lanham Act trademark infringement claim and unfair competition claim have two

elements. *See* 15 U.S.C. §§ 1114 and 1125(a). First, plaintiff must show "that its mark is

protected under the Lanham Act." To prevail on a Lanham Act claim, a plaintiff must establish

that (1) its mark is protectable, and (2) the defendant's use of the mark is likely to cause

confusion among consumers. *Packman v. Chicago Tribune Co.* 267 F.3d 628, 638 (7th Cir.

2001); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a

plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

The OKAYSOU Mark, registered on the principal register, is "prima facie evidence of the

validity of the registered mark ... and of [Plaintiff's] exclusive right to use the mark in commerce

on or in connection with the goods or services specified in the registration subject to any

conditions or limitations stated therein."  15 U.S.C. §1115(a)

Further, Plaintiff's unregistered APOLLO and CAYMAN marks are distinctive and have

been continuously used by Plaintiff.  Consumers have come to associate the inherently

distinctive Plaintiff's Marks with Plaintiff's Products. Through Plaintiff's promotional efforts,

business conduct, and continuous use of its website and its ecommerce store and products,

Plaintiff has developed and maintained clients throughout the United States, including in Illinois.

Through its widespread and favorable acceptance and recognition by the consuming public, the

Plaintiff's Marks used in connection with the Plaintiff's Products have become an asset of

substantial value as a symbol of Plaintiff, Plaintiff's high-quality products, and its goodwill.

Accordingly, Plaintiff has established valid and enforceable rights in the Plaintiff's Marks

when used in connection with Plaintiff's Products as described herein.  Therefore, Defendants'

use of identical and/or confusingly similar marks and copying of Plaintiff's Marks on their

unauthorized products is likely to cause confusion and make one believe that the unauthorized

products are manufactured by Plaintiff.  Plaintiff has submitted evidence showing that

Defendants are selling products that look similar or identical to Plaintiff's products and bear Plaintiff's Marks or confusingly similar marks. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiff's Products. See, e.g., *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement and unfair competition.

C.    **There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Plaintiff's Mark has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's

reputation, loss of exclusivity, and loss of future sales.  The extent of the harm to Plaintiff's

reputation and goodwill and the possible diversion of customers due to loss in brand confidence

are both irreparable and incalculable, thus warranting an immediate halt to Defendants'

infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,*

300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable

harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and

irreparable injury, loss, or damage if an injunction is not issued in accordance with Federal Rule

of Civil Procedure 65(b).

### D.    The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest IOS Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of

success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

preliminary relief is not granted, then it must next consider the harm Defendants will suffer if

preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will

suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled

to little equitable consideration. "When considering the balance of hardships between the parties

in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed

Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the

mark of another for similar goods acts at his own peril since he has no claim to the profits or

advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla.

1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a

defendant whose injury results from the knowing infringement of the plaintiff's trademark."

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A.  A Preliminary Injunction Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Plaintiff's Mark Is Appropriate.

Plaintiff requests a preliminary injunction requiring Defendants to immediately cease all use of the Plaintiff's Marks or confusingly similar marks, and/or otherwise unfairly competing with Plaintiff on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Plaintiff's Marks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Plaintiff's Marks and/or copying and distribution of the Plaintiff's Copyrighted Designs. The need for such relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet.

Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell and offer to sell Unauthorized Products. Many courts have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B.    Preventing the Fraudulent Transfer of Assets is Appropriate.

Plaintiff requests that Defendants' assets remain frozen so Plaintiff's right to an equitable accounting of Defendants' profits from sales of Unauthorized Products is not impaired. Since the Amazon has provided Plaintiff with information, including the identification of several financial accounts linked to the Seller Aliases which were offering for sale and/or selling Unauthorized Products.   Several financial accounts associated with the Seller Aliases have been frozen.    Supplemental Declaration of Vahe Khojayan at ¶ 2.  In the absence of a preliminary injunction, Defendants may attempt to transfer financial assets to off-shore accounts.  Vahe Khojayan Declaration at ¶¶ 6-11 (Dkt. No. 8).  Specifically, on information and belief, the Defendants in this case hold most of their assets in  off-shore  accounts,  making  it easy  to  hide  or  dispose  of  assets,  which  will  render  an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.,* 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover …

defendant's profits." Similarly, Plaintiff has shown a strong likelihood of succeeding on the

merits of its copyright infringement claim, and therefore Plaintiff is entitled to recover "… any

profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b).

Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to

Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore,

this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset

freeze to preserve relief sought by Plaintiff.  The Northern District of Illinois in *Lorillard

Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark

infringement case brought by a tobacco company against owners of a store selling counterfeit

cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized

that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.*

(citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)).

Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable

remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable

harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen,

Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts.

Accordingly, an asset restraint is proper.


## V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a preliminary injunction is vested in the Court's

sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of

the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, trademark

infringement, copyright infringement, and false designation of origin, Plaintiff respectfully

requests this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars

($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-

3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

VI.    **CONCLUSION**

Defendants' unlawful operations are irreparably harming Plaintiff's business, its famous

brand, and consumers. In view of the foregoing and consistent with previous similar cases,

Plaintiff respectfully requests that this Court enter a preliminary injunction in the form submitted

herewith.


Dated this 18th day of December  2023


  /s/ Vahe Khojayan
_____

Vahe Khojayan, Esq.
Email: vkhojayan@yklaw.us
Michael A DiNardo, Esq.
Email: mdinardo@yklaw.us
YK Law, LLP
445 S. Figueroa Street, Ste 2280
Los Angeles, CA 90071
Tel: (213) 401-0970
Fax: (213) 529-3044